**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.: 5:17-CR-454 |
| Plaintiff, | ) |
| v. | ) JUDGE JOHN R. ADAMS |
| JANICE M. SHUFFORD, | ) |
| Defendant. | ) **DEFENDANT'S SENTENCING MEMORANDUM** |

Defendant Janice Shufford, through undersigned counsel, submits the following Sentencing Memorandum in support of her position for sentencing. Defendant respectfully submits that an appropriate sentence for her is two years imprisonment on Counts 13–17, followed consecutively by a negligible period of incarceration for Counts 1–6, followed by a term of strict supervised release.

### I. PRELIMINARY STATEMENT

Janice Shufford is a 54-year-old, first-time offender. She admits that she has made mistakes over the years, and she counts her association with Brigid Sommerville and Christine Robinson among them, but she has always strived first and foremost to be a good mother to her two children. Her children have written letters to the Court on her behalf. (**Exhibits A** and **B**.)

Janice exercised her constitutional right to a trial in this case, and she respects the verdict and the Court's authority and duty to sentence her. She respectfully requests only that the Court sentence her fairly. She objects to several aspects of the Presentence Investigation Report (ECF No. 98), which objections are described further below. But even if the Court were to properly

accept Janice's Guidelines arguments, the U.S. Sentencing Guidelines still call for significant prison time.  A Guidelines sentence would be an unjust result in this case.

## II. U.S. SENTENCING GUIDELINES

Because U.S. Probation & Pretrial Services ("PPS") improperly calculated loss amount in an unfair manner that constitutes an illegal "trial tax" and improperly applied a role enhancement, the Presentence Investigation Report ("PSR") overstates the sentence that the U.S. Sentencing Guidelines ("U.S.S.G.") recommend.

### 1. The Loss Amount is Improperly Calculated.

PPS considers the loss amount to be $1,826,064.  This figure is the "entire loss caused by all three codefendants in this matter."  (PSR, ECF No. 98 at 17, PageID# 536.)  Defendant agrees that, as a matter of law, a co-conspirator can be held responsible for reasonably foreseeable harm caused by another co-conspirator in furtherance of the conspiracy.  However, it is Defendant's understanding that neither Co-Defendant Sommerville nor Co-Defendant Robinson were attributed the entire loss caused by all three codefendants during the time periods they were involved in the conspiracy.  That is to say, the codefendants were only attributed the loss that was *directly attributable* to them individually.

As a matter of fairness, loss should be calculated for Defendant in the same way it was calculated for the codefendants by the Government and PPS.  By insisting that Defendant be attributed the total loss amount, the Government is essentially asking the Court for an illegal "trial tax" because Defendant exercised her constitutional right to a trial by jury.  *See generally Fears v. Miller*, No. 1:09cv698, 2009 WL 6315341 at *9 (N.D. Ohio Dec. 1, 2009) (White, M.J.) ("A sentence is unconstitutionally vindictive if it imposes a greater punishment because the defendant

exercised a constitutional right, such as the right to jury trial . . . .") (citing *Wasman v. United States*, 468 U.S. 559, 568 (1984)).

Based on previous discussions with the Government, it is undersigned counsel's understanding that the loss directly attributable to Defendant would be around $1.1 million – $1.2 million. Because the loss directly attributable to Defendant was between $550,000 – $1.5 million, the correct specific-offense characteristic enhancement on the Conspiracy and Wire Fraud counts is to add 14 levels to the base offense level of 7, resulting in a **21** before other any other enhancements are applied. U.S.S.G. §§ 2B1.1(a), 2B1.1(b)(1)(H).

2. *A Role Enhancement Is Not Appropriate.*

Although the Government described Defendant as the leader of the conspiracy in its statements and arguments at trial, the evidence presented at trial does not support a role enhancement. The evidence showed that Brigid Sommerville, Christine Robinson, and Defendant each had distinct, equal roles in the conspiracy. According to the trial testimony, Sommerville and Robinson would collect names through their sources and would bring those names to Defendant. Defendant would then enroll the individuals in online courses.

It is not appropriate to give Defendant a role enhancement simply because she was the "sole conspirator able to complete the FAFSA forms at the onset." (PSR, ECF No. 98 at 7, PageID# 526.) Signing individuals up for school and logging into their accounts was simply Defendant's role in the charged conspiracy. If a role enhancement is appropriate for Defendant under this theory, it would be appropriate for each of the codefendants as well, an absurd result. For example, Sommerville was uniquely able to secret names of prisoners out of state prisons. None of the co-conspirators supervised, managed, organized, or led any of the others.

In addition to there being no factual basis to apply this enhancement, there is also no policy reason to apply a role enhancement in this case. The Commentary to U.S.S.G. § 3B1.1 states that the role adjustment "is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate."

There is no reason to conclude that Defendant profited more from the conspiracy than any of the co-conspirators. There was testimony that Defendant was paid several hundred dollars per name enrolled.  Comparatively, Sommerville testified that when her boyfriend in prison was signed up for school and obtained $3,000 – $3,500, Sommerville kept $700, Defendant got a few hundred dollars, and the rest went to the boyfriend's prison books.

There is no reason to conclude that Defendant is more responsible for the criminal activity relative to the codefendants. Even if there were, any differences in relative responsibility have likely already been accounted for by the Government's allocation of the loss amount.  Robinson was attributed a loss amount of $76,449 and Sommerville was attributed a loss amount of $520,285, leading to far disparate offense levels under the Guidelines.

There is also no reason to conclude that Defendant presents a greater danger to the public or is more likely to recidivate than the co-defendants.  In fact, the opposite is true.  Nothing suggests that Defendant committed any offense conduct since 2015.  To the contrary, Defendant has demonstrated continued commitment to abiding by the terms of her release.  She even removed her computer from her home because of the Court's concerns expressed after the trial.

There is no factual or policy reason for applying a role enhancement to Defendant in this case.

### 3. *Correct Calculation of the Guidelines*

PPS calculated the loss amount in an unfair manner and improperly applied a role enhancement. The Government did not substantively respond to Defendant's objections on these points.[1] Therefore, the correct total offense level for the grouped Conspiracy and Wire Fraud counts is **21**, corresponding to a recommended Guidelines Range of 37–46 months on Counts 1–6.

### 4. *Restitution Should Be Reduced.*

It is undersigned counsel's understanding from conversations with the Government that at least $300,000, and possibly more, of the disbursements from the U.S. Department of Education were returned to the Department. Defendant respectfully requests that the restitution amount be reduced by the amount of money returned to the Department.

## III. STATUTORY SENTENCING FACTORS

Properly accepting Defendant's arguments regarding the Guidelines calculations, the Guidelines would recommend a total sentence of 61–70 months (37–46 months on Counts 1–6 and 24 months on Counts 13–17). Sentencing Janice to a Guidelines sentence would be unjust.

The only sentence that would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing in this case is a non-Guidelines sentence. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]").

---

[1] According to the PSR, in response to the objections the Government merely informed the probation officer that it "supports the information contained in The Offense Conduct and the Offense Level Computation sections" and will address the objections at the sentencing hearing if necessary. (*E.g.*, PSR, ECF No. 98 at 17, PageID# 536.)

Defendant is 54 years old and this is her first offense. There is no reason to believe she has engaged in any offense conduct since December 2015, and throughout this case she has complied with all conditions set by the Court.

Moreover, she has serious health concerns and has been diagnosed with heart failure. Defendant expects that her condition will be fatal before she could even complete the mandatory-minimum two-year sentence.

### 1. *Serious Health Problems Warrant a Departure, Variance, or Other Non-Guidelines Sentence.*

A departure, variance, or other non-Guidelines sentence is appropriate because Defendant has serious health concerns and has been diagnosed with heart failure. U.S.S.G. § 5H1.1 and § 5H4.4 provide that age and physical condition may be relevant in determining whether a departure is warranted, if those conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from typical cases covered by the guidelines.

This is one of the rare situations where a physical impairment should be considered "extraordinary." Ms. Shufford's health is failing, and it is her understanding that her doctors have given her only months to live. Courts have found that end-stage illnesses can warrant a downward departure. *See United States v. Streat*, 893 F. Supp. 754 (N.D. Ohio 1995); *United States v. Velasquez*, 762 F. Supp. 39 (E.D.N.Y. 1991).

Moreover, Ms. Shufford requires strict compliance with a medication regimen and suffers from a severe latex allergy that will require that special precautions be taken. These factors, individually and taken together, distinguish this case from the typical cases covered by the Guidelines. They justify a departure and/or a variance, as recognized by the probation officer in the PSR.

6

*2. 18 U.S.C. § 3553(a) Factors*

Title 18, United States Code § 3553(a) lists a number of factors that courts consider when determining an appropriate sentence. *See* 18 U.S.C. § 3553(a). Considering these factors, the only sentence "sufficient, but not greater than necessary" would be a sentence of two years on the Aggravated Identity Theft counts (which is mandatory), with an additional negligible amount of imprisonment on the Conspiracy and Wire Fraud counts.

As the Court correctly recognized by sentencing co-defendant Robinson to probation and giving co-defendant Sommerville the opportunity ahead of sentencing to demonstrate continued compliance with the Court's expectations, imprisonment is not necessary solely because of the "nature and circumstances" of this offense; "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" or to afford adequate general deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(1),(a)(2)(A)–(B).

The offense conduct targeted the Department of Education, not individuals. There is, of course, no doubt that the conduct affected individuals. With regard to the Conspiracy and Wire Fraud counts, the conduct may have added to the deleterious effect that fraud has in general on the cost of education, efficiency of government programs, and cost to taxpayers. But probably the more serious negative effect on individuals comes from identity theft. As the Court heard from the Victim Impact Statement filed with the PSR, identity theft can negatively affect individuals.[2]

---

[2] It is worth noting that it appears to the undersigned, after a review of the discovery, that no IP address identified as belonging to Defendant was used to file the FAFSA for this particular victim or to log the victim into online courses. It appears that an IP address identified as belonging to Brigid Sommerville was captured in FAFSA records for this victim.

However, testimony revealed that many of the individuals whose information was used in the conspiracy gave that information willingly and sometimes sold their information.

More importantly, Defendant will already be sentenced to at least two years in prison on the Aggravated Identity Theft counts, providing substantial punishment to reflect the damage caused by the charged conduct and to provide deterrence. No additional imprisonment is necessary, beyond any negligible amount required by law, to meet those factors.

With regard to the factors concerned with Defendant as an individual, including "the history and characteristics of the defendant," individual deterrence, and "protect[ing] the public from further crimes of the defendant," it is clear that no term of imprisonment is necessary beyond the two years of mandatory imprisonment. Defendant is 54 years old and is a first-time offender. The character letters attached hereto, written by her children, speak more about her character than the conduct charged in the Indictment. And even according to the Indictment and the testimony at trial, Defendant stopped committing the offense conduct in December 2015, and nothing suggests she has committed any criminal conduct since then. She has carefully abided by all the terms of her release, which terms could be part of her supervised release.

The § 3553(a) factors require a non-Guidelines sentence. Any sentence more severe than that requested by Defendant would improperly lead to "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). Co-Defendants Robinson and Sommerville have criminal records involving dishonest acts, among other things. Co-Defendant Sommerville was found to have a significant amount of heroin in her home, suggesting that she was actively involved in other illegal conduct at the same time she was involved in the charged conspiracy. Co-Defendant Robinson was sentenced to probation. Co-Defendant Sommerville was given the opportunity to demonstrate law-abiding

conduct as the Court considers what her sentence should be, suggesting that probation may be appropriate for her as well.

It would be an unwarranted disparity to sentence Defendant, who has no criminal record and with no indication that there is a risk of reoffending, to any term of imprisonment over the mandatory-minimum sentence of two years and any negligible amount of time required for Counts 1–6.

## V.     CONCLUSION

Defendant respectfully requests that the Court sentence her to a term of imprisonment of 24 months on Counts 13–17, followed by a negligible term of imprisonment on Counts 1–6.

Respectfully submitted,

 /s/ *Paul M. Flannery*
Paul M. Flannery (OH: 0091480)
**Flannery | Georgalis, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
(216) 367-2094
paul@flannerygeorgalis.com

*Attorney for Defendant Janice Shufford*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ *Paul M. Flannery*
Paul M. Flannery

*Attorney for Defendant Janice Shufford*